**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JETBLACK CYCLING PTY LTD., | C.A. No. 1:26-cv-00040-SDG |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| WAHOO FITNESS L.L.C., | |
| Defendant. | |

**JETBLACK'S PARTIAL MOTION TO DISMISS UNDER RULE 12(B)(6)**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

LEGAL STANDARD.............................................................................................6

ARGUMENT .......................................................................................................10

I.     The Claims are Directed to the Abstract Idea of Receiving an Input and Adjusting Resistance on a Cycling Trainer Accordingly.........10

    A.     The '036 Patent is a Classic Example of Result-Oriented Claiming. ...............................................................................12

    B.     Four Independent Indicators Confirm Claim 1 is Abstract..........16

II.    The Claims Contains No Inventive Concept. ..................................21

III.   The Remaining Claims Are Similarly Ineligible............................24

    A.     The Dependent Claims Fall with Claim 1....................................24

    B.     Independent Claims 8 and 9 Are Not Materially Different. ........25

CONCLUSION....................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  890 F.3d 1354 (Fed. Cir. 2018) ...............................................................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).................................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................9

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
  113 F.4th 1359 (Fed. Cir. 2024) ...............................................................7

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ................................................................24

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) .......................................................22

*Cascades Branding Innovation LLC v. Aldi, Inc.*,
  2025 WL 2731321 (Fed. Cir. Sept. 25, 2025) ...............................23, 25

*Caselas, LLC v. VeriFone, Inc.*,
  624 F. Supp. 3d 1328 (N.D. Ga. 2022), *aff'd,* 2024 WL 2720092
  (Fed. Cir. May 28, 2024) ...............................................................9, 10

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ...................................................................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014) .............................................................7, 10, 11

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ................................................................13

*Dusek v. JPMorgan Chase & Co.*,
  832 F.3d 1243 (11th Cir. 2016) ................................................................9

ii

*EDGAR Assn. v. Hammond Software, Inc.*,
   805 F. Supp. 3d 1304 (N.D. Ga. 2025)....................................................9

*Elec. Power Grp. v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) .......................................................11

*Genetic Techs. Ltd. v. Merial L.L.C.*,
   818 F.3d 1369 (Fed. Cir. 2016) ........................................................9

*Gottschalk v. Benson*,
   409 U.S. 63 (1972)...................................................................13

*GoTV Streaming, LLC v. Netflix, Inc.*,
   166 F.4th 1053 (Fed. Cir. 2026) ................................................*passim*

*Implicit LLC v. Home Depot U.S.A., Inc.*,
   676 F. Supp. 3d 1312 (N.D. Ga. 2023).................................................9

*Intell. Ventures I LLC v. Erie Indem. Co.*,
   711 Fed. Appx. 1012 (Fed. Cir. 2017)................................................24

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) .......................................................15

*Parker v. Flook*,
   437 U.S. 584 (1978)....................................................11, 13, 14, 25

*PerDiemCo LLC v. NexTraq LLC*,
   720 F. Supp. 3d 1365 (N.D. Ga. 2024).................................................9

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ................................................*passim*

*ScanComm LLC v. Block, Inc.*,
   775 F. Supp. 3d 1263 (N.D. Ga. 2025)...............................................9, 10

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) ........................................................9

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) .....................................................16, 18

iii

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1378 (Fed. Cir. 2019) ..................................................................8, 22, 23

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ..................................................................18, 19

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .........................................................................18

*Uniloc USA, Inc. v. ADP, LLC*,
    772 Fed. Appx. 890 (Fed. Cir. 2019).............................................................9, 17

*United Services Automobile Assn. v. PNC Bank N.A.*,
    139 F.4th 1332 (Fed. Cir. 2025) ....................................................................6, 20

*Valentine Commun., LLC v. Six Continents Hotels, Inc.*,
    389 F. Supp. 3d 1223 (N.D. Ga. 2019)..............................................................10

**Statutes**

35 U.S.C. § 101 ....................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................9

**INTRODUCTION**

JetBlack's challenge to Wahoo's '036 patent presents a straightforward application of Section 101 precedent. Cycling coaches have always done the same thing: watch a rider, assess their effort, and adjust the workout. Wahoo's '036 patent simply automates that practice. A cycling trainer wirelessly receives an input, applies well-known physics equations to calculate a resistance level, and adjusts the brake accordingly. That is the entire claim. Wahoo did not invent a new brake, a new flywheel, or a new wireless communication protocol in the '036 patent. It took a familiar concept—input, calculate, and adjust—implemented it using conventional hardware and well-known mathematics, and patented it.

Section 101 of the Patent Act exists to prevent that. Abstract ideas are not patentable because a patent on an idea is a monopoly on a concept, and a monopoly on a concept forecloses every future inventor who wants to solve the same problem differently. The '036 patent, as written, would cover any cycling trainer that receives an input, applies any mathematical equations to simulate a bicycle ride, and adjusts resistance accordingly—regardless of the specific technology or engineering approach used. That is a patent on an idea, and the law does not permit it.

The Supreme Court has been clear for decades that receiving an input, applying a mathematical formula, and adjusting a parameter in response, is abstract. The Federal Circuit has applied that principle consistently across technologies as

1

diverse as power grids, financial models, streaming media, and document processing. The '036 patent applies that same pattern to a generic cycling trainer and the result should be the same.

Nothing in the claims changes that conclusion. The "physics engine" is just well-known math—the basic equations of force, friction, and acceleration that no one can own. The wireless receiver is any off-the-shelf protocol. The magnetic brake is a standard technology that long predates the '036 patent. And the mode-switching step is simply an "if-then" instruction. The specification confirms at every turn that the trainer relies on conventional hardware performing their ordinary functions. The Patent Office recognized during prosecution that the claimed methods could be performed on any cycling trainer at all. There is no inventive concept here, and none could be pleaded in light of the patent's own disclosures.

This Court can and should resolve the question now. Patent eligibility is a question of law with underlying factual determinations. The Federal Circuit has repeatedly held that it may, and often should, be resolved on a motion to dismiss, and many courts in this District have done so. The '036 patent is invalid and Wahoo's counterclaim should be dismissed with prejudice.

## BACKGROUND

JetBlack filed this action on January 5, 2026, seeking a preliminary injunction requiring Wahoo to withdraw its ITC complaint and asserting breach of contract.

ECF 1. On February 3, the Court ordered Wahoo to withdraw that complaint. ECF 53. On February 20, Wahoo answered and counterclaimed for infringement of four patents and breach of contract. ECF 71-1. JetBlack moves to dismiss one of those patents, U.S. Patent No. 12,330,036 ("the '036 patent") (ECF 71-17).

The '036 patent is titled "System and Method for Controlling a Bicycle Trainer" and describes "methods for controlling and operating a bicycle trainer using a computing device." '036 pat. at 3:10-22. Bicycle trainers are devices that hold a bicycle in place so a rider can exercise indoors. *Id*. at 1:36-41. Trainers can include a flywheel and a magnetic brake that can apply resistance to that flywheel, which is what simulates the feeling of riding on different terrain or at different levels of difficulty. *See id.* at 1:39-41, 5:19-23.

The '036 patent does not claim a new flywheel, new brake, or new physical device—the claims do not describe any novel hardware at all. Rather, they disclose the concept of taking a conventional bike trainer and adding wireless communication technology to control the bike trainer. Independent claim 1 recites four steps:

1. A method of operating a cycling trainer, comprising:

wirelessly receiving a variable value;

generating a control signal for a magnetic brake assembly of the cycling trainer, wherein generating the control signal includes providing the variable value to a physics engine including equations to simulate a bicycle ride stored in a memory;

transmitting the control signal to the magnetic brake assembly to

3

modify a braking force applied to a flywheel member of the cycling trainer by the magnetic brake assembly; and

changing operation from a first mode in which the physics engine is used to generate control signals and a second mode in which control signals are generated without using the physics engine.

Consider each step in turn. The claim starts with a preamble: the invention is "[a] method of operating a cycling trainer," meaning it is about a way of doing something, not a new physical object. The method then comprises four steps.

*First*, something "wirelessly receiv[es] a variable value," meaning that an input, like speed or power, is received. *See* '036 pat. at 17:18-19. The claim does not specify what receives the value or how this is done apart from being "wireless."

*Second*, the trainer "generat[es] a control signal" for its magnetic brake. Generating that signal involves passing the received value through a "physics engine." A physics engine is a well-known type of software that simulates physics with mathematical equations—it is not a tangible object. *See id.* at 14:30-32 (memory "may store . . . a physics engine defined by equations for simulating a bicycle ride."). Physics engines are widely available online as open-source software,[1] and Wahoo did not invent them. The Patent Office recognized this during prosecution, when the examiner cited an earlier patent that already disclosed a method for controlling a bike trainer using a "physics engine" with "equations of

---

[1] *E.g.*, Project Chrono, Newton, Jolt Physics, Open Dynamics Engine.

4

motion for biking scenarios including aerodynamic drag, hill angles, friction/rolling drag, and dynamic forces." Ex. 1 at 301-02.

The claim lacks specificity, requiring only a physics engine "including equations to simulate a bicycle ride stored in a memory." The specification explains this can involve calculating forces like resistance and acceleration, '036 pat. at 16:1-24—rudimentary concepts that are necessary for simulating real-world physics in any engine—and so claim 1 covers nearly any possible physics engine.

*Third*, the trainer transmits the control signal to its magnetic brake, which adjusts the braking force applied to the flywheel. The claim does not invent magnetic brakes or flywheels, both of which have long existed.[2] This step is just about transmitting the signal to a magnetic brake to modify the braking force.

*Fourth*, the trainer can switch between modes—one in which the physics engine is used to generate control signals, and one in which it is not. Again, nothing in the claim specifies how this mode-switching is performed.

The '036 patent is therefore directed to the basic idea of a cycling trainer that wirelessly receives an input, uses it to determine a desired resistance level, and adjusts its braking mechanism accordingly. In short, this is the concept of wirelessly controlling a bike trainer. This is an abstract idea and the patent is invalid.

---

[2]    *See, e.g., Eddy current brake*, https://en.wikipedia.org/wiki/ Eddy_current_brake; *Flywheel*, https://en.wikipedia.org/wiki/Flywheel.

## LEGAL STANDARD

***Patent Eligibility.*** Section 101 of the Patent Act allows patents on "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. But the Supreme Court has long recognized three exceptions to that language: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted). These exceptions protect against monopolization of "the basic tools of scientific and technological work," because allowing exclusive rights over those tools would impede innovation, "thereby thwarting the primary object of the patent laws." *Id.* (citation omitted).

To separate eligible inventions from ineligible concepts, courts apply a two-step test established in *Alice*. 573 U.S. at 217-18. At both steps, the *Alice* analysis turns on "the claims, not the specification, . . . because 'the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method.'" *United Services Automobile Assn. v. PNC Bank N.A.*, 139 F.4th 1332, 1337 (Fed. Cir. 2025) (citation omitted). "[W]hile the specification may help illuminate the true focus of a claim," it "must always yield to the claim language in identifying that focus." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

At step one, the court asks whether the claim is directed to a patent-ineligible

6

concept, like an abstract idea. *Alice.* 573 U.S. at 217. This requires "look[ing] to the character of the claims as a whole." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024). The Federal Circuit "often" holds claims are directed to an abstract idea when they are, for example, "directed to 'a longstanding or fundamental human practice'" or "the steps of obtaining, manipulating, and displaying data," or when they "us[e] purely 'result-focused functional language, containing no specificity about how the purported invention achieves those results.'" *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1064 (Fed. Cir. 2026) (citations omitted). And "an abstract idea remains an abstract idea even when narrowed . . . to a particular use or environment." *Id.*

A claim may still be directed to an abstract idea even if it references tangible devices or manipulates a physical component. *See, e.g.*, *Alice*, 573 U.S. at 226 (claims that recite computer components nevertheless directed to an abstract idea); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (claims reciting a "scanner" nevertheless directed to an abstract idea).

If the claim is directed to an ineligible concept, step two asks whether the remaining elements of the claim, individually and as an ordered combination, supply an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon

the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (cleaned up). That "significantly more" must be beyond "well-understood, routine, conventional activit[ies]." *Id.* at 225. It is not enough, for example, to apply an abstract idea on a generic computer or device. *Id.* at 225-26. And "the abstract idea itself cannot supply the inventive concept, 'no matter how groundbreaking the advance.'" *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (citation omitted). If there is no transformative inventive concept, the claim is ineligible.

***Resolving Eligibility on 12(b)(6).*** Courts routinely resolve § 101 at the pleading stage because patent eligibility is "a question of law that may be informed by underlying factual determinations, such as whether a claim limitation or combination of limitations is well-understood[,] routine, and conventional." *GoTV*, 166 F.4th at 1067 (cleaned up). "Step one [of *Alice*] focuses on the legal issue of the meaning of the claims and specification (and prosecution history if pertinent), which at least typically can be answered based on the intrinsic evidence, whereas step two focuses on often-factual issues of real-world knowledge and practices (within the important legal constraints on what constitutes a qualifying inventive concept, such as not itself being an abstract idea)." *Id.* (cleaned up).

At the 12(b)(6) stage, courts apply the standard pleading rules that govern every civil case. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018). Well-pleaded factual allegations are accepted as true, but

8

legal conclusions without adequate factual support receive no deference. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Labels and conclusions are not enough, and factual allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the allegations do not show entitlement to relief, the claim must be dismissed. *Id.* at 558.

In applying Rule 12(b)(6) to § 101, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," such as the claims, specification, and prosecution history. *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017); *Uniloc USA, Inc. v. ADP, LLC*, 772 Fed. Appx. 890, 898 n.3 (Fed. Cir. 2019). Thus, while accepting the complaint's factual allegations as true, courts examine the patent and prosecution history[3] to determine whether those allegations are foreclosed by the intrinsic record.

The Federal Circuit has repeatedly affirmed that § 101 is often suitable for resolution on a motion to dismiss. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). Courts in this District grant such motions regularly. *See, e.g.*, *EDGAR Assn. v. Hammond Software, Inc.*, 805 F. Supp. 3d 1304 (N.D. Ga. 2025); *ScanComm LLC v. Block, Inc.*, 775 F. Supp. 3d 1263 (N.D. Ga. 2025); *PerDiemCo LLC v. NexTraq LLC*, 720 F. Supp. 3d 1365 (N.D. Ga. 2024); *Implicit LLC v. Home Depot U.S.A., Inc.*, 676 F. Supp. 3d 1312 (N.D. Ga. 2023); *Caselas,*

---

[3] A certified copy of the prosecution history is attached as Exhibit 1.

*LLC v. VeriFone, Inc.*, 624 F. Supp. 3d 1328 (N.D. Ga. 2022), *aff'd,* 2024 WL 2720092 (Fed. Cir. May 28, 2024); *Valentine Commun., LLC v. Six Continents Hotels, Inc.*, 389 F. Supp. 3d 1223 (N.D. Ga. 2019).

## ARGUMENT

Each claim of the '036 patent is ineligible under § 101, but the Court need only consider claim 1 to dispose of the patent in its entirety. Under "well-established" Federal Circuit precedent, a court may resolve patent eligibility by analyzing a single representative claim where, as here, all claims are "substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348 (citation omitted); *see, e.g.*, *ScanComm*, 775 F. Supp. 3d at 1272 (identifying representative claim); *Caselas*, 624 F. Supp. 3d at 1340 (same).

That approach is appropriate here because all claims share the same core structure: wirelessly receiving an input, processing it through a generic physics engine, and adjusting brakes accordingly. Claim 1 is representative of that structure and its defects apply equally to every claim in the patent. The Court can therefore resolve § 101 at the outset by analyzing claim 1 alone. Still, for completeness, JetBlack briefly addresses the remaining claims in Section III.

**I.    The Claims are Directed to the Abstract Idea of Receiving an Input and Adjusting Resistance on a Cycling Trainer Accordingly.**

Stripped of its jargon, claim 1 describes a simple and familiar process: receive an input value, apply known mathematical relationships, and use the result to set a

resistance level on a cycling trainer. That is the abstract idea. The claim tells us what each step should accomplish—receive a value, generate a signal, transmit it, adjust a brake—but says nothing meaningful about *how* they are done. *See GoTV*, 166 F.4th at 1063-65 (collecting cases and summarizing law). This result-oriented claiming is a hallmark of an abstract idea because it effectively captures the idea itself—the desired outcome—rather than any specific method of achieving it. *See id.* at 1064.

One of the most common forms of result-oriented claiming in software and method patents is the receive-process-output sequence: a claim that takes in information, applies some calculation or rule to it, and produces an output—without disclosing anything meaningful about how the calculation works. The Supreme Court first identified this pattern as abstract nearly fifty years ago in *Parker v. Flook*, 437 U.S. 584 (1978), where a patent claimed a method of measuring an input value, applying a mathematical formula, and adjusting a setting accordingly, *id.* at 585. The Federal Circuit has faithfully applied *Flook*'s reasoning, repeatedly holding the receive-process-output pattern to be abstract. *See Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (collecting and analyzing information and presenting the results is abstract); *Content Extraction*, 776 F.3d at 1347 (collecting data, recognizing certain data in the set, and storing it is abstract); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (selecting information, analyzing it, and reporting or displaying the results is abstract).

**A.    The '036 Patent is a Classic Example of Result-Oriented Claiming.**

The '036 patent follows this same pattern. It receives a value, processes it through a physics engine, and send the resulting signal to a brake. The step-by-step analysis below confirms what the structure already reveals: at no step does the claim adequately describe *how* it accomplishes what it claims to accomplish.

*The first step of claim 1*—wirelessly receiving a variable value—is pure data intake and is the functional equivalent of reading a number. The claim does not specify a wireless protocol, a frequency band, a data format, or any technical parameter of the wireless link. It does not improve the efficiency of wireless transmission or describe any advance in how data moves between devices. The specification confirms this: it names existing technologies like ANT+ and Bluetooth, or simply "other wireless protocols capable of API communication," demonstrating that wireless communication is treated as an interchangeable black box where any available protocol will do. '036 pat. at 14:48-53. This step simply collects a value.

*The second step*—generating a control signal using a physics engine—is data processing. A value goes in, a calculation occurs, and a signal comes out. The claim specifies only that the received value is passed through a "physics engine" a term the patent defines exclusively by reference to its intended function: it "include[s] equations to simulate a bicycle ride." The claim does not require any particular model or method of simulating those forces. Any set of equations, no matter how

12

simple or complex, conventional or cutting-edge, would satisfy the limitation.

Before examining the physics engine further, a threshold principle controls: mathematical formulas are not patentable. *See, e.g.*, *Flook*, 437 U.S. at 595 ("[I]f a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory." (citation omitted)); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."); *SAP Am.*, 898 F.3d at 1167 (selecting information, analyzing it using math, and reporting or displaying the results "is all abstract"). A formula is one of the basic tools of scientific work that belongs to everyone. *See Gottschalk v. Benson*, 409 U.S. 63, 72 (1972) (claims ineligible because they "would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself").

That principle is dispositive here. The specification describes the physics engine as a set of equations that simulate the forces acting on a bicycle: friction, wind resistance, acceleration, and slope. '036 pat. at 16:1-10. Those are the basic equations of motion taught in every introductory physics course and implemented in countless simulation software. The patent did not invent any of them. And critically, the claim is not limited to any particular way of performing those simulations—it

13

covers any physics engine using any equations that could be said to "simulate a bicycle ride." The claim covers the application of well-known physical relationships to an input value to generate an output. That is the receive-process-output pattern at its most transparent. Calling that calculation a "physics engine" does not change what it is: math. And math is not patentable.

The Supreme Court held exactly this kind of claim abstract in *Flook*. There, the patent claimed a three-step method: measure a current input value from a catalytic conversion process, apply a mathematical formula to calculate an updated alarm limit, and adjust that limit accordingly. 437 U.S. at 585-86. The Court held the claim abstract because a mathematical formula—however useful or specific to its application—is not patentable. *Id.* at 590-95. Surrounding that formula with conventional steps of measuring an input and adjusting an output did not save it. *Id.* Replace the catalytic conversion process for a cycling trainer, and the alarm limit formula for a physics engine, and *Flook* is claim 1. The structure is the same: receive an input value, apply a formula, adjust a physical parameter in response. *Id.* at 585.

The Federal Circuit reached the same conclusion in *SAP*, where the patent claimed a method of selecting financial data, applying mathematical models to analyze it, and reporting the results. 898 F.3d at 1167. The court held the claims abstract, and its reasoning forecloses any argument that the physics engine saves claim 1: "[n]o matter how much of an advance in the finance field the claims recite,

14

the advance lies entirely in the realm of abstract ideas." *Id.* at 1163. The same is true here. Whatever the physics engine does, it does it with equations. Those equations simulate forces—math. And regardless of the field in which math is applied—be it finance, catalytic chemistry, or cycling—the claim is still abstract. *See id.* at 1169.

*The third step*—transmitting the control signal to the brake—is data output. The signal produced in step two is transmitted to the magnetic brake, which adjusts the braking force on the flywheel. The claim does not specify how the signal is transmitted—there is no communication protocol, no interface specification, no technical mechanism for delivering a digital instruction to a physical brake. It does not describe how the brake translates a signal into a physical braking force. It does not claim any improvement to the brake itself—magnetic brakes were a standard mechanism long before this patent. And it does not claim any improvement to the flywheel, the axle, the drivetrain, or any physical component the signal affects.

Any cycling trainer using any communication method, any magnetic brake design, and any interface between software and hardware, would satisfy this limitation as long as a signal goes out and a brake responds. A claim that covers every means of achieving a result without specifying any of them is claiming the result itself, and results are not patentable. *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342-45 (Fed. Cir. 2018) (summarizing law).

*The fourth step*—switching between a mode that uses the physics engine and

a mode that does not—is a basic conditional decision. It is the computational equivalent of an if-then statement: if the physics engine is engaged, use it; if not, do not. *See* '036 pat. at 25:42-49 ("*[I]f* in step 20004 the bicycle trainer 1902 is determined to not be wirelessly connected . . . , *then* in step 2010 the bicycle trainer may default to a standard riding mode." (emphasis added)). The claim simply states the result that the system can operate in two ways. Simple logical operations, like assigning or changing states based on conditions, are abstract. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) (holding claim abstract where it recited "a method of changing one description . . . into another description . . . by way of . . . assignment conditions").

Taken together, claim 1 does what result-oriented claiming always does: it names what should happen at each stage without specifying how any of it is accomplished. The claim follows the same input-process-output pattern that has repeatedly been held to be abstract.

**B.      Four Independent Indicators Confirm Claim 1 is Abstract.**

The considerations below independently reinforce the conclusion reached in Section I and provide additional bases on which the Court may find claim 1 abstract.

**1.  The Claimed Advance Over the Prior Art is Itself Abstract.**

When evaluating whether a claim is directed to an abstract idea, the inquiry "often turns to the question of what the patent asserts as the claimed advance over

16

the prior art." *GoTV*, 166 F.4th at 1063 (quoting *Broadband iTV*, 113 F.4th at 1367). A patent's prosecution history is a reliable source for identifying that advance, and can properly be considered at the pleading stage. *See Uniloc*, 772 Fed. Appx. at 898 n.3 (prosecution history is part of the intrinsic record available on 12(b)(6)).

As brief context, before a patent issues, an examiner at the Patent Office reviews the application and determines whether the claimed invention is patentable. If the examiner concludes that, for example, the claimed invention is not new, the examiner rejects the application and requires the applicant to either argue against the rejection or amend the claims to distinguish the prior work. The applicant's response reveals what the applicant believes makes their invention different from prior work.

That is what happened here. During prosecution of the '036 patent, the examiner rejected claim 1 based on an earlier patent called Radow, which taught the same thing. Ex. 1 at 301-02 (rejecting "claim 31"—how claim 1 was originally numbered—under section 102(a)(1)). The examiner explained that Radow already taught wirelessly receiving a variable value, generating a control signal for a magnetic brake assembly using a physics engine for simulating a bike ride, and transmitting the control signal to the magnetic braking assembly to modify a braking force. *Id.* Wahoo only overcame this rejection by adding another requirement to claim 1: "changing operation from a first mode . . . and a second mode." *Id.* at 328-29 (amending "claim 31"). The examiner then allowed the claim. *Id.* at 339. The

17

mode-switching limitation is thus Wahoo's own identified advance over the prior art.[4] As shown above, the mode-switching limitation is abstract.

### 2. Claim 1 Automates What Cyclists Have Always Done.

The legal framework above establishes that claim 1 is result-oriented and follows a pattern courts have held abstract for fifty years. But there is also a more intuitive way to see the same thing. The substance of claim 1—observe a rider's effort, consult a model of appropriate resistance, adjust the brake accordingly—is something humans have done for as long as exercise equipment has existed. Automating that practice does not make it an invention.

A "telltale sign of abstraction is when the claimed functions are mental processes that can be performed in the human mind." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361-62 (Fed. Cir. 2023) (cleaned up). This includes "analyzing information by steps people go through in their minds" and "collecting information, including when limited to particular content," *id.* (citations omitted)—both of which are steps in the '036 patent. This principle follows from *Alice*, where the Court held that applying a longstanding human practice using conventional technology does not transform it into a patent-eligible invention. 573 U.S. at 220-

---

[4] The examiner was addressing novelty, not eligibility, which are distinct inquiries. A claim may be "new" yet still directed to an abstract idea. *See Synopsys*, 839 F.3d at 1151 ("[A] claim for a new abstract idea is still an abstract idea."); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("That some of [these] steps were not previously employed in this art is not enough.").

18

21. The relevant question is whether the claim's substance mirrors longstanding human practices, not whether a human could literally perform each step. *See id.* at 220; *Trinity*, 72 F.4th at 1361-64.

The '036 patent maps directly onto a longstanding human activity. A cyclist on a trainer performs every substantive step of claim 1. She observes her speed or effort—her version of wirelessly receiving a variable value. She consults her training experience to determine the appropriate resistance—her version of the physics engine. She adjusts the brake—her version of transmitting a control signal. And she chooses between training approaches depending on the session, sometimes targeting a specific power output and sometimes setting a fixed resistance—her version of switching between modes. Claim 1 simply automates that process.

### 3. The Claim Adds No Improvement to Any Physical Component of the Trainer.

Any doubt about what claim 1 is directed at is resolved by a straightforward observation: it does not improve the physical components of the cycling trainer at all. The trainer serves only as a generic platform for carrying out the claimed idea.

The Federal Circuit has drawn a line in this area. On one side are patent-eligible claims directed at "a concrete asserted improvement in how [computer] functions are carried out." *GoTV*, 166 F.4th at 1064. And on the other side are claims that "simply call for the use of computers and networks as tools to carry out an abstract idea, using their ordinary functions without specific hardware or process

19

advances in those functions—*e.g.,* receiving inputs, storing and retrieving, processing, outputting (including displaying), and transmitting." *Id.*

Claim 1 is firmly on the abstract side of the line. It recites nothing more than the ordinary operations of a generic computing system: receive an input, process it, transmit the output, and switch between processing approaches. Nothing in the specification can alter the claim's basic sequence of receiving, processing, transmitting, and switching. *See USAA*, 139 F.4th at 1337 ("We focus on the claims, not the specification, to determine eligibility.").

This too was recognized by the Patent Office during prosecution. Wahoo originally sought both "system" claims, which required a particular type of cycling trainer, and "method" claims about methods of operating a trainer. The Patent Office required Wahoo to choose only one type of claim, and in explaining why, specified that the method claims that ultimately issued "can be practiced with a materially different cycling trainer, as the method claims do not recite the structural features of the cycling trainer found in the product claims." Ex. 1 at 190. Wahoo did not contest that characterization and chose to go with the method claims. *Id.* at 202.

### 4. Claim 1 Monopolizes an Idea.

The breadth of claim 1 further confirms the above analysis. Any cycling trainer that wirelessly receives an input, runs it through any physics engine using any equations to simulate a bicycle ride, transmits that signal to a magnetic brake,

20

and can switch between using the physics engine and not using it, satisfies the claim. A trainer that uses a simple lookup table, one employing a machine-learning model, and one using a biomechanical model would all infringe equally. That impermissibly claims the idea of a "smart" trainer. *See Alice*, 573 U.S. 216-17 (warning against claims that risk preempting the underlying idea).

## II.    The Claims Contains No Inventive Concept.

Because the claims are directed to an abstract idea, the Court turns to step two, which asks whether the claim's elements, individually and as an ordered combination, supply an inventive concept that transforms the abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 217-18. They do not. Once the abstract idea of receiving an input, processing it, and adjusting resistance accordingly is set aside, what remains is a set of generic components in a conventional order. None supplies the "significantly more" that step two requires. While the Court accepts well-pleaded allegations as true, it does not credit legal conclusions or allegations that are contradicted by the intrinsic record, and here that record confirms that every element recited in claim 1 is conventional and generic.

A closer look at the remaining claim elements shows that nothing goes beyond conventional technology. *First*, the "wirelessly receiving" step covers any wireless communication protocol, which the specification notes can include conventional methods of Bluetooth, ANT+, or anything else, without improving any of them. '036

pat. at 14:48-53. And ANT+ underscores the point: it is a longstanding interoperability standard designed for fitness equipment to exchange sensor data.[5] ANT+ already contemplates a use case where variable data like speed and cadence are wirelessly transmitted to a coach or computer.[6] The '036 patent acknowledges that its system can simply plug into this preexisting technology, confirming that nothing in this step supplies an inventive concept.

*Second*, "generating a control signal" adds no inventive concept because the claimed physics engine is itself an abstract idea. *See Trading Techs.*, 921 F.3d at 1385; *SAP Am.*, 898 F.3d at 1168 ("What is needed is an inventive concept in the non-abstract application realm."). Even so, the claim allows the use of any conventional physics engine, so long as it includes some equations to simulate a bicycle ride. As explained, physics engines are a pre-existing category of software, *see* Ex. 1 at 301-02, and the memory that stores them is likewise conventional, '036 pat. at 14:26-32 ("RAM, ROM, and other forms of memory").

*Third*, receiving and sending information over a network, as required by the "transmitting" step, "is not even arguably inventive." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

---

[5] *ANT / ANT+ Defined*, https://www.thisisant.com/developer/ant-plus/ant-antplus-defined.

[6] *ANT+ Advantages*, https://www.thisisant.com/business/why-ant/ant-advantages (describing one use case).

*Fourth*, switching between modes is still an abstract idea, not an inventive concept. *See Trading Techs.*, 921 F.3d at 1385; *SAP Am.*, 898 F.3d at 1168. And from an engineering perspective, this is no different than a system selecting between two standard control strategies—a model-based approach and a set-point approach—both long understood and routinely implemented.

*Finally*, the ordered combination fares no better. The sequence of receive, process, transmit, switch, is the logical order in which these generic functions occur. No one would transmit a signal before generating it, or generate a signal before receiving the input it depends on. The arrangement cannot be "significantly more."

Step two may sometimes involve underlying fact questions when there is a genuine dispute over whether a claim element is conventional, but this is not one of those cases. *See GoTV*, 166 F.4th at 1067-68. Wahoo's complaint contains no allegations whatsoever that could supply an inventive concept. ECF 70 ¶¶ 80-98. And the intrinsic record removes any doubt because the specification "allow[s] the use of conventional off-the-shelf components to accomplish all the steps of the method." *Cascades Branding Innovation LLC v. Aldi, Inc.*, 2025 WL 2731321, at *4 (Fed. Cir. Sept. 25, 2025). Wahoo should therefore not be given leave to amend because "[n]o amount of new allegations or additional evidence could change that reality or the patent's specification." *Id.* (affirming district court's dismissal of patent with prejudice). Wahoo cannot allege facts that would give rise to an inventive

23

concept on this record, so the '036 patent should be dismissed with prejudice.

## III.   The Remaining Claims Are Similarly Ineligible.

As explained, claim 1 is representative of the '036 patent, and the Court can end its inquiry there. But if Wahoo disputes that claim 1 is representative, JetBlack provides the additional analysis of the other claims below.

### A.   The Dependent Claims Fall with Claim 1.

Dependent claims 2-7 take the basic sequence of claim 1—receiving data, using math, and outputting a control signal—and add only routine details about the type of information used or the generic components involved. Limiting an abstract idea to particular data inputs or implementing it with conventional technology does not make it patent-eligible. *See, e.g.*, *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 n.1 (Fed. Cir. 2018); *Intell. Ventures I LLC v. Erie Indem. Co.*, 711 Fed. Appx. 1012, 1017 n.2 (Fed. Cir. 2017).

That is all these claims do. Several simply specify the type of information used: claim 2 limits the control signal to one based on rotational velocity, and claim 7 involves measuring and transmitting rotational speed. These are all conventional data inputs that do not change how the claimed process works. Others specify routine ways of obtaining that data—like claim 3's use of an optical sensor to measure rotational velocity—which the specification treats as a familiar component. *See* '036 pat. at 12:44-46. And the remaining claims add only generic implementation details,

like claim 5's requirement of "communication between a computing element . . . and a computing device," or claim 6's use of an application programming interface, which are standard features of modern computing systems. *See id.* at 2:43-47 (generic smartphone is "computing device"), 18:53-55 (API "may be downloaded from a publicly available website"). The dependent claims remain directed to the same abstract idea, and do not supply an inventive concept.

### B.    Independent Claims 8 and 9 Are Not Materially Different.

Independent claims 8 and 9 fare no better. They follow the same abstract input–calculation–output idea as claim 1, implemented using generic computing components, conventional communication techniques, and standard trainer hardware. Their only additions are a generic "computing element" that receives variables and control signals, which the specification explains can be "a laptop, a smartphone, a tablet, a personal digital assistant, a watch, or any other suitable computing device," '036 pat. at 13:57-63. Beyond that, claim 9 requires controlling the magnetic brake assembly "based on a power set point," which the specification describes as simply another equation for force, *id.* at 25:56-58, and thus fails for the same reason as the physics engine. *See, e.g.*, *Flook*, 437 U.S. at 595.

### CONCLUSION

For these reasons, JetBlack respectfully requests that the Court hold that the '036 patent is ineligible and dismiss Wahoo's counterclaim with prejudice.

25

Dated: March 27, 2026

Respectfully submitted,

/s/ Courtland L. Reichman

Christine E. Lehman (*pro hac vice*)
Connor S. Houghton (*pro hac vice)*
Natalie Griffin (*pro hac vice*)
Savannah Carnes (*pro hac vice*)
Reichman Jorgensen Lehman &
  Feldberg LLP
1909 K Street NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 894-7310
clehman@reichmanjorgensen.com

Courtland L. Reichman
Georgia Bar No.: 599894
Sarah O. Jorgensen
Georgia Bar No.: 541130
Reichman Jorgensen Lehman &
  Feldberg LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (470) 870-3294
creichman@reichmanjorgensen.com
sjorgensen@reichmanjorgensen.com

Attorneys for JetBlack Cycling Pty Ltd.

26

## CERTICATE OF COMPLIANCE WITH LR 5.1(C)

Counsel certifies pursuant to Local Rule 5.1(C) that this document has been prepared in Times New Roman 14-point font with margins of one (1) inch.

This 27th day of March, 2026        */s/ Courtland L. Reichman*

                                              Courtland L. Reichman

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I have electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

This 27th day of March, 2026        */s/ Courtland L. Reichman*

                                              Courtland L. Reichman