**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JETBLACK CYCLING PTY LTD.,

    Plaintiff,

             v.

WAHOO FITNESS L.L.C.,

    Defendant.

Civil Action No.
1:26-cv-00040-SDG

## OPINION AND ORDER

This matter is before the Court on the motion by Defendant Wahoo Fitness

L.L.C. for a preliminary injunction [ECF 94]. Having carefully considered the

parties' briefing, and with the benefit of oral argument, the Court **DENIES** the

motion.

**I.      Background**[1]

On January 5, 2026, Plaintiff JetBlack Cycling Pty Ltd. initiated this suit

against Wahoo in connection with several patents held by Wahoo for bicycle

trainers and JetBlack's sale of a trainer called the "Victory."[2] This is not the first

time the parties have fought about these patents. In fact, they entered into a

Settlement Agreement on November 8, 2022, related to JetBlack's sale of a trainer

---

[1]    Many of the parties' filings were docketed under provisional seal. The Court
has addressed their various motions to seal in a separate order. However, to
the extent this Order reflects information the parties submitted under seal, the
Court concludes that it is not confidential and should not remain sealed.

[2]    ECF 1; ECF 58. JetBlack describes bicycle trainers as "devices that allow cyclists
to ride their bicycle indoors." ECF 58, ¶ 25.

marketed as the "Volt," which Wahoo claimed infringed its patents.[3] In this case, JetBlack seeks a declaration that its products (including the "Victory") do not infringe one of Wahoo's patents. JetBlack also asserts that Wahoo breached the Settlement Agreement when, in December 2025, Wahoo filed a complaint with the International Trade Commission (the ITC) against it.[4] On February 3, 2026, the Court entered a preliminary injunction that directed Wahoo to take all necessary steps to withdraw its ITC complaint.[5] Wahoo complied, and the ITC terminated the proceeding on February 9.[6]

On February 20, Wahoo filed counterclaims against JetBlack, asserting that JetBlack breached the Settlement Agreement by selling the Victory and that the Victory and Volt infringe on several of Wahoo's patents.[7] A few weeks later, Wahoo moved for a preliminary injunction.[8] Wahoo's motion seeks an order

---

[3]   ECF 59 (sealed).

[4]   *See generally* ECF 58.

[5]   ECF 53.

[6]   ECF 71-1, ¶ 8.

[7]   ECF 70 (redacted); ECF 71-1 (sealed). The patents at issue are: U.S. Patent No. 10,933,290 (the '290 Patent); U.S. Patent No. 11,090,542 (the '542 Patent); U.S. Patent No. 11,559,732 (the '732 Patent); and U.S. Patent No. 12,330,036 (the '036 Patent) (collectively, the Patents). The Patents and the dispute that led to the execution of the Settlement Agreement are further described in the Court's February 3, 2026 Order. ECF 53.

[8]   ECF 94 (redacted); ECF 95-1 (sealed).

prohibiting JetBlack from "filing, causing to be filed, or assisting with filing" requests for ex parte reexamination challenging Wahoo's patents in the United States Patent and Trademark Office (the USPTO).[9] JetBlack has not yet pursued any such invalidity challenges but intends to do so.[10] Wahoo claims that any reexamination request would breach the Settlement Agreement and the Court's interpretation of that agreement in its February 3 injunction order.[11] The Court heard argument on the motion on May 20, 2026.[12] Because Wahoo has not shown a substantial likelihood of success on the merits of its contention that a request by JetBlack for reexamination would breach the Settlement Agreement, Wahoo is not entitled to preliminary injunctive relief.

## II.   Discussion

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d

---

[9]   ECF 95-1, at 4 (sealed).

[10]   ECF 98, at 9.

[11]   ECF 95-1 (sealed).

[12]   ECF 113.

3

1205, 1210 (11th Cir. 2003); Fed. R. Civ. P. 65(a).[13] A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (citation and internal quotation marks omitted). If the movant fails to establish a likelihood of success on the merits or irreparable harm, the Court need not make findings on the remaining preliminary injunction factors. *Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000).

## A.    Likelihood of Success

### 1.    No cause of action relates to JetBlack's alleged anticipatory breach of the Settlement Agreement.

Wahoo's motion is premised on the alleged anticipatory breach of the Settlement Agreement by JetBlack. During oral argument, counsel for Wahoo asserted that Wahoo's breach of contract counterclaim supports the request for injunctive relief. But that cause of action is expressly based on JetBlack's sale of the Victory trainer in the United States and Europe, not on any reexamination request that JetBlack intends to make. The Court does not have authority to award injunctive relief that is untethered to a claim or cause of action in the case. *Alabama*

---

[13]    Where procedural matters in a patent case are not unique to patent issues, the law of the circuit where the case originated (here, the Eleventh) applies rather than Federal Circuit law. *Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1328 (Fed. Cir. 2000).

*v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance. There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim). An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.") (cleaned up).

Counsel for Wahoo rightly pointed out during oral argument that this problem could be remedied by permitting Wahoo to add an appropriate cause of action. Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."). But, as discussed below, the Court finds that exercise would be futile since Wahoo has not satisfied its burden of demonstrating a substantial likelihood of success on its anticipatory breach claim in any event.

**2.      The Settlement Agreement does not prohibit JetBlack from making a reexamination request.**

Wahoo's entitlement to injunctive relief depends on whether a request by JetBlack to the USPTO for a reexamination of the Patents would violate the Settlement Agreement. This, in turn, depends on the interaction between two separate provisions in the contract—the forum selection clause and the "challenge" clause. This is a pure question of Georgia law for the Court to resolve.[14] *Tex. Instruments*, 231 F.3d at 1329 (general contract interpretation is not within the exclusive jurisdiction of the Federal Circuit and is ordinarily a question of state law).

The forum selection clause in Section 12.2 of the Settlement Agreement says:

> Each party irrevocably agrees that the federal and state courts of Atlanta, Georgia shall have exclusive jurisdiction to settle any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with this agreement or its subject matter or formation.[15]

The challenge clause is in Section 2.3. It states, in relevant part:

> *Unless Wahoo initiates a legal proceeding against JetBlack asserting infringement of one or more of the Patents*, JetBlack, on behalf of itself and each of its Affiliates, agree to not, directly or indirectly, by themselves or through their Representatives:

---

[14]  The Settlement Agreement is governed by the laws of the State of Georgia, without regard to Georgia's choice of law principles. ECF 59, at 8, § 12.1 (sealed).

[15]  ECF 59, at 8 (sealed) (emphasis added).

(a) challenge the patentability, validity or enforceability of any of the Patents, or any claims thereof (a "Patents Challenge"); or (b) voluntarily assist, encourage, support, finance, or otherwise provide any information to, any third party for the purpose of a Patents Challenge. A Patents Challenge prohibited under this clause 2.3 includes, but is not limited to, filing or maintaining: (i) a request for inter partes review; (ii) *a request for reexamination*; (iii) any other proceeding in the United States Patent and Trademark Office or the European Patent Office or equivalent agency; or (iv) a declaratory judgment action.[16]

Wahoo contends that the broad language of the forum selection clause includes requests for reexamination and requires that any validity challenge be brought in the exclusive forum.[17] According to Wahoo, Section 2.3 does not negate that exclusivity.[18] Wahoo also asserts that JetBlack's interpretation of Sections 2.3 and 12.2 would render the forum selection clause meaningless.[19] Finally, Wahoo claims that the Court's grant of JetBlack's motion for a preliminary injunction forecloses JetBlack's ability to make the arguments it does now.[20]

---

[16]  ECF 59, at 4 (sealed).

[17]  ECF 95-1, at 10–14 (sealed).

[18]  *Id.* at 14–15 (sealed); ECF 106-1, at 7–8 (sealed).

[19]  ECF 106-1, at 8–11 (sealed).

[20]  ECF 95-1, at 14–15 (sealed); ECF 106-1, at 13–16 (sealed).

### *i.* **The forum selection clause does not forbid what the challenge clause permits.**

The forum selection clause broadly provides for exclusive jurisdiction in courts in Atlanta to resolve disputes between the parties concerning the Settlement Agreement and its subject matter.[21] Standing alone, the Court has no difficulty agreeing with Wahoo that this provision generally encompasses a request to the USPTO to reexamine the Patents. But under Georgia law, "the whole contract should be looked to in arriving at the construction of any part," O.C.G.A. § 13-2-2(4), and the forum selection clause must be read in harmony with the challenge clause. The challenge clause provides that, *when Wahoo has initiated a proceeding against JetBlack for infringement*, Section 2.3's prohibition on JetBlack challenging the validity of the Patents is lifted. If that occurs, JetBlack is no longer barred from pursuing a request for reexamination with the USPTO (or European Patent Office, or any other equivalent agency) as expressly permitted by the challenge clause.[22] Section 2.3 does not negate the exclusivity of the forum selection clause, but its exceptions do limit the scope of Section 12.2 when triggered.

---

[21]   ECF 53, ¶¶ 11–14.

[22]   ECF 59, at 4 (sealed).

### ii. Wahoo's interpretation of the Settlement Agreement would render Section 2.3 meaningless.

Wahoo's contention that JetBlack may only raise challenges to the validity of the Patents in Atlanta when the challenge clause exception is activated reads large parts of Section 2.3 out of the agreement.[23] If JetBlack were only ever permitted to bring a "Patents Challenge" in the exclusive jurisdiction, Section 2.3 could simply have said that—*e.g.*, "JetBlack may pursue litigation consistent with the forum selection clause if Wahoo brings an infringement proceeding." Instead, the parties carved out a "Patents Challenge" to include inter partes review requests, reexamination requests, and "any other proceeding" before a patent agency, and did not limit where such challenges could be brought if Wahoo initiated infringement proceedings.[24] When Wahoo does so, the Patents Challenge prohibition is lifted and JetBlack may initiate the specified proceedings. If the parties had not intended for JetBlack to be able to pursue challenges with the USPTO or similar agencies, there was no need to carefully identify such agencies in Section 2.3 and most of that provision would be superfluous. O.C.G.A. § 13-2-2(4) ("The construction which will uphold a contract in whole and in every part is to be preferred."); *Stern's Gallery of Gifts, Inc. v. Corp. Prop. Invests., Inc.*, 176 Ga.

---

[23]   ECF 95-1, at 12–13 (sealed); ECF 106-1, at 5 (sealed).

[24]   ECF 59, at 4 (sealed).

App. 586, 594 (1985) ("In interpreting a contract, the court is required by law to give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect.") (citations and internal quotation marks omitted).

Wahoo's assertion that "Section 2.3 cannot be read to negate or displace § 12.2's broad command that disputes in 'connection with' the 'subject matter' of the Agreement be resolved *exclusively* in Atlanta" has it wrong.[25] Section 2.3 does not negate or displace the forum selection clause, nor does anything in the Settlement Agreement suggest that this section simply "drop[s] out" when Wahoo decides to pursue infringement claims.[26] Rather, it is when Wahoo decides to pursue such claims that the exceptions in the challenge clause come into play.

This does not make the forum selection clause "meaningless" as Wahoo contends.[27] Even if the challenge clause exceptions are triggered, nothing in that clause would permit either party to file a court case other than in the authorized jurisdictions. As counsel for JetBlack asserted during oral argument, the Section 2.3 carve-outs identify *which* challenges may be brought when Wahoo sues for

---

25   ECF 95-1, at 15 (sealed).

26   ECF 106-1, at 7 (sealed)

27   ECF 106-1, at 8–11.

infringement (*e.g.*, inter partes reviews, agency proceedings) and indicates *where* they must be brought (*e.g.*, the USPTO, the European Patent Office). Certain types of challenges may only be brought in a particular forum—for instance, Wahoo conceded during argument that reexamination requests can only be made with the USPTO, not in court. For those challenges, the specific language of Section 2.3 controls over the general language of Section 12.2. But for the type of proceedings that *can* be pursued in courts (such as, for example, declaratory judgment actions), Section 2.3 says nothing about *where* they must be filed so the forum selection clause controls. *Holtzclaw v. City of Dalton*, 189 Ga. App. 650, 652 (1988) ("A limited or specific provision of a contract will prevail over one that is more broadly inclusive.") (citing *Hearn v. Old Dominion Freight Lines*, 172 Ga. App. 658, 659 (1984)).

The Federal Circuit's decision in *DexCom, Inc. v. Abbott Diabetes Care, Inc.*, is instructive. There, DexCom sued Abbott for patent infringement and Abbott petitioned for inter partes review of the patents. DexCom then sought a preliminary injunction to prevent Abbott from proceeding on the petition based on a forum selection clause in a settlement agreement between the parties. The clause provided for exclusive jurisdiction in the District of Delaware. DexCom asserted that the inter partes review petitions violated this restriction. But the Federal Circuit upheld the denial of DexCom's request for an injunction on the

11

ground that DexCom had not shown a likelihood of success on its argument that the forum selection clause prohibited the filing of inter partes review petitions. *See generally* 89 F.4th 1370 (Fed. Cir. 2024).

As here, the settlement agreement contained a challenge provision that permitted a party to assert a challenge against a patent when it was accused of infringing that patent. *Id.* at 1376. "Challenge" was expressly defined to include inter partes review. *Id.* The appellate court therefore held that the agreement "allowed the filing of IPR [inter partes review] petitions under certain circumstances notwithstanding the existence of the forum selection clause." *Id.* The Federal Circuit distinguished its decisions in *Texas Instruments*, 231 F.3d 1325; *Gen. Protecht Group, Inc. v. Leviton Manufacturing Co.*, 651 F.3d 1355 (Fed. Cir. 2011); and *Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930 (Fed. Cir. 2019), because those cases did not involve agreements with a similar challenge-clause carve-out. 89 F.4th at 1376. Accordingly, the court concluded that DexCom could not succeed on the merits. *Id.* at 1377.

Wahoo's reliance on *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998 (Fed. Cir. 2022), is therefore misplaced.[28] Potential actions related to patent infringement or invalidity — including disputes filed with a court or administrative

---

[28]   ECF 95-1, at 12–13 (sealed).

agency—were expressly governed by the forum selection clause in *Nippon*, which required all such actions to be brought in the District of Delaware. *Id.* at 1002. The Federal Circuit thus concluded that Sarepta's filing of petitions for inter partes review violated the agreement because the forum selection clause expressly applied to such disputes. *Id.* at 1005–06. Here, the Settlement Agreement's forum selection clause contains no similar specific, inclusionary language, but the challenge clause does.

During argument, Wahoo also pointed to *Nomadix, Inc. v. Guest-Tek Interactive Entertainment, Ltd.*, a case from the Central District of California. In Nomadix, the parties had entered into a license agreement with a forum selection clause and challenge provision. The forum selection clause required all disputes "arising out of" the agreement to be brought in the Central District or a county superior court. Under the challenge clause, Guest-Tek could not challenge the validity or enforceability of Nomadix's patents in any forum; however, if Nomadix asserted any of the patents against Guest-Tek, the provisions of the challenge clause would no longer bind Guest-Tek. After Nomadix sued Guest-Tek for breach of the license agreement, Guest-Tek filed several petitions for inter partes review. Nomadix asserted that those petitions violated the forum selection clause; the court agreed. *See generally* 2020 WL 1032395 (C.D. Cal. Jan. 23, 2020).

13

But *Nomadix* does not aid Wahoo here. The language of the challenge clause in *Nomadix* broadly encompassed all types of challenges, specifying various fora to ensure that Guest-Tek could not pursue any *type* of proceeding that attacked patent validity or enforceability unless Nomadix asserted the patents. If Nomadix did so, the restriction on challenges no longer applied but the structure of that provision did not alter the clear limitation on *where* challenges could be brought. There was no indication in the agreement that the challenge clause was intended to limit the forum selection clause. Here, as discussed above, there is. It also should go without saying that *Nomadix* is neither a reported decision nor binding on this Court in any event.

### iii.    The Court's ruling on JetBlack's motion for preliminary injunction says nothing about the interaction between Sections 2.3 and 12.2.

Wahoo argues that, because the Court previously concluded that its ITC complaint fell within the scope of the forum selection clause, any reexamination request by JetBlack must also be within the clause's scope.[29] But the issue presented by Wahoo's motion is not just whether a request to reexamine the Patents falls within the scope of Section 12.2 but whether Section 2.3 creates a carve out to Section 12.2's broad scope under the circumstances presented here. Nothing in the Court's February 3 Order addressed the interplay between the forum

---

29   ECF 95-1, at 14–15 (sealed).

selection clause and the challenge clause. JetBlack's arguments making this point[30] are not inconsistent with the position it took in litigating its own motion for a preliminary injunction.

Moreover, Wahoo's argument misconstrues the law-of-the-case doctrine, which provides that "the findings of fact and conclusions of law by an *appellate* court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *This That & The Other Gift & Tobacco, Inc. v. Cobb Cnty.*, 439 F.3d 1275, 1283 (11th Cir. 2006) (quoting *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990)) (emphasis added). The doctrine does not prohibit *this* Court from revisiting one of its own orders, much less an interlocutory one. *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1289 (11th Cir. 2009) ("A court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court. Consequently, law of the case applies only where there has been a final judgment.") (cleaned up). Wahoo is simply incorrect that the Court is barred from considering the interaction between Section 2.3 and Section 12.2 based on the "law of the case" or estoppel.[31]

---

[30]    ECF 102-1, at 11–12 (sealed).

[31]    ECF 106-1, at 13–14 (sealed).

### III.    Conclusion

Wahoo's motion for a preliminary injunction [ECF 94] is **DENIED**.

JetBlack's partial motion to dismiss [ECF 88] remains under consideration.

**SO ORDERED** this 8th day of June, 2026.

_____
Steven D. Grimberg
United States District Judge